# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RENEE MCLEOD,

    Plaintiff,

v.                                                                                                          Case No. 8:18-cv-748-T-AAS

ANDREW SAUL,
Commissioner,
Social Security Administration,[1]

    Defendant.
_____/

## ORDER

Renee McLeod seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), administrative record, pleadings, and joint memorandum the parties submitted, the Commissioner's decision is **AFFIRMED**.

---

[1] On June 17, 2019, Andrew Saul became Commissioner of the Social Security Administration. Consistent with Federal Rule of Civil Procedure 25(d), Mr. Saul is substituted as a party in Nancy Berryhill's place.

1

## I. PROCEDURAL HISTORY

Ms. McLeod applied for SSI and DIB because of a disability she claims began on March 23, 2006. (Tr. 268–80). Disability examiners denied Ms. McLeod's applications initially and after reconsideration. (Tr. 115–36, 141–65). Ms. McLeod then requested a hearing before an ALJ, who found Ms. McLeod not disabled. (Tr. 45–57, 193–96)

The Appeals Council denied Ms. McLeod's request for review of the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1–3). Ms. McLeod now seeks judicial review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Ms. McLeod was fifty-four years old when she submitted her SSI and DIB applications and fifty-five years old when the ALJ held the hearing. (Tr. 70, 268, 274). She has a high school education. (Tr. 70). Ms. McLeod claimed disability because of "back issues, anxiety, depressed, hands issues/arthritis, asthma, headaches, acid reflux, [and] bi-polar [sic]." (Tr. 115, 125).

## B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[3] she is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment included in the Listings, she is not disabled. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent her from performing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity ("RFC").[4] Fifth, if a claimant's impairments (considering her RFC, age, education, and

---

[2] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. §§ 404.1572, 416.910.

[4] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. §§ 404.1545, 416.945(a).

3

past work) do not prevent her from performing other work that exists in the national economy, she is not disabled. §§ 404.1520(g), 416.920(g).

The ALJ here determined Ms. McLeod engaged in no substantial gainful activity since her alleged onset date (March 23, 2006). (Tr. 47). The ALJ found Ms. McLeod has the following impairments: "degenerative disc disease, coronary artery disease, osteoarthritis of the hands, asthma, limited visual acuity, anxiety, and depression." (*Id.*) (citations omitted). Nonetheless, the ALJ found Ms. McLeod has no impairment or combination of impairments that meet or medically equal the severity of an impairment included in the Listings. (Tr. 48) (citations omitted).

The ALJ found Ms. McLeod has the RFC to perform light work with the following limitations:

> [Ms. McLeod] can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; occasionally work around dust, odors, fumes, and pulmonary irritants; and frequently interact with supervisors and coworkers but never interact with the general public. Additionally, any job performed cannot require finer visual acuity than is needed to read ordinary newspaper or book print.

(Tr. 49–50). Based on these findings, the ALJ determined Ms. McLeod could perform her past relevant work as a cleaner. (Tr. 55). Alternatively, the ALJ found Ms. McLeod could perform jobs that exist in significant numbers in the national economy, specifically as a small-parts assembler, marker, and bagger. (Tr. 56). As a result, the ALJ found McLeod not disabled. (*Id.*).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. McLeod argues the Commissioner's final decision should be remanded because the Appeals Council erred when it considered new medical evidence Ms. McLeod submitted after the ALJ's decision. (Doc. 20, pp. 12–14, 20–22). Specifically, Ms. McLeod argues the language the Appeals Council used in its notice, which declined to review the ALJ's decision, fails to comply with Social Security regulations. (*Id.* at 12–14). And Ms. McLeod argues the Appeals Council erred when it found the new medical evidence submitted after the ALJ's decision is neither new nor material evidence that requires reversing the ALJ's decision. (*Id.* at 20–22). This order will address Ms. McLeod's arguments in turn.

#### 1. Whether Appeals Council's notice fails to comply with Social Security regulations.

Ms. McLeod argues that, in its letter declining to review the ALJ's decision, the Appeals Council failed to include language required under Social Security regulations. (*Id.* at 12–14). According to Ms. McLeod, the Appeals Council's stated reason for not considering new evidence Ms. McLeod submitted after the ALJ's decision "is ambiguous and vague." (*Id.*). Further, Ms. McLeod argues that if the Appeals Council declined to consider the new evidence because it was not material, Section 416.1470 requires the Appeals Council to include language stating that Ms. McLeod had sixty days to file a

new application, which the Appeals Councils would then consider a new application for disability benefits. (Doc. 20, p. 13). Ms. McLeod argues the Appeals Council erred because it included no language about Ms. McLeod's sixty-day deadline. (*Id.*).

The Commissioner argues the Appeals Council complied with Social Security regulations when it declined to review the ALJ's decision. (*Id.* at 14–20). The Commissioner also points out that the Appeals Council need not include detailed analysis when it declines to review an ALJ's decision. (*Id.* at 18–19). Therefore, the Commissioner concludes the Appeals Council committed no error in its notice to Ms. McLeod.

The regulations at issue here state the following:

> If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 416.1435, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application. The notice will also advise you that if you file a new application within 60 days after the date of the Appeals Council's notice, your request for review will constitute a written statement indicating an intent to claim benefits under § 416.340. If you file a new application within 60 days of the Appeals Council's notice, we will use the date you requested Appeals Council review as the filing date for your new application.

20 C.F.R. §§ 416.1470(c), 404.970(c) (2017).[5] Under the plain language of these regulations, its requirements apply (1) if the claimant submits additional evidence unrelated to the period before the ALJ's decision or (2) if the Appeals Council finds no good cause for the claimant's failure to submit the additional evidence before the deadline to do so under Sections 416.1435 and 404.935. *Id.*

In its notice to Ms. McLeod, the Appeals Council stated the following:

> You submitted evidence from Suncoast Community Health Centers, dated September 5, 2017, through October 30, 2017 (17 pages); and Thomas DiGeronimo, M.D., dated September 18, 2017, through October 16, 2017 (16 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

(Tr. 2). The Appeals Council found no reasonable probability that Ms. McLeod's new evidence would change the ALJ's decision. (*Id.*). The Appeals Council did not find the new evidence unrelated to the period before the ALJ's decision; nor did the Appeals Council discuss whether good cause existed for Ms. McLeod's failure to submit the new evidence sooner. So, the notice language required under Sections 416.1470(c) and 404.970(c) does not apply to

---

[5] The Appeals Council issued its notice to Ms. Mcleod on February 9, 2018. (Tr. 1–4). Before February 2018, the latest versions of Sections 404.970(c) and 416.1470(c) were promulgated on April 1, 2017. Those versions of the regulations govern the Appeals Council's notice in this case. *See also Brady v. Heckler*, 724 F.2d 914, 918–19 (11th Cir. 1984) (applying regulation in effect when the final decision issued at administrative level).

8

the Appeals Council's notice in this case, and Ms. McLeod argument about the sixty-day deadline is unsuccessful.

Ms. McLeod's argument that the Appeals Council must provide detailed analysis in its notice is also unsuccessful. Nothing requires the Appeals Council to provide a detailed analysis about new evidence when the Appeals Council denies the claimant's request for review. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014) (citations omitted). Therefore, remand on this issue is inappropriate.

> 2. Whether Appeals Council erred when it considered Ms. McLeod's new medical evidence.

Ms. McLeod argues the Appeals Council erred when it failed to find that new evidence Ms. McLeod submitted after the ALJ's decision was new and material requiring "reversal or remand of the ALJ decision." (Doc. 20, pp. 20–22). The Commissioner argues the new medical evidence contains the notes very similar to medical notes the ALJ considered when he issued his decision; so, the Commissioner argues remand based on Ms. McLeod's new evidence is unnecessary. (*Id.* at 22–32).

The Commissioner considers new evidence at each step of the administrative process. *See* 20 C.F.R. § 404.900(b) (stating the Commissioner "will consider at each step of the review process any information" the claimant presents); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th

Cir. 2007) (citation omitted). The Appeals Council will review the ALJ's decision if a claimant submits additional evidence that is new, material, and relates to the period before the ALJ's decision (i.e., the evidence is chronologically relevant). §§ 404.970(a)(5), 416.1470(a)(4) (2017); *Ingram*, 496 F.3d at 1261 (citation omitted).

Evidence is new when the claimant submits it to the Appeals Council after the ALJ's decision. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (discussing evidence claimant submitted to the Appeals Council after the ALJ's decision); *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (same). Evidence is material if a reasonable probability exists the new evidence would change the administrative result. *Washington*, 806 F.3d at 1321 (quotation and citation omitted). And evidence is chronologically relevant if it "relates to the period on or before the date of [the ALJ's] decision." §§ 404.970(a)(5), 416.1470(a)(5) (2017); *Hargress*, 883 F.3d at 1309 (citations omitted). Medical evidence might be chronologically relevant even if it is based on treatment the claimant received after the ALJ's decision. *Washington*, 806 F.3d at 1322–23 (citation omitted).

In determining whether new evidence relates back to the period before the ALJ's decision, courts consider the following: (1) whether, during the period relevant to the ALJ's decision, the claimant described the symptoms the new

10

evidence addresses; (2) whether the doctor, who generated the new evidence, reviewed the claimant's treatment notes from the period relevant to the ALJ's decision; and (3) whether evidence exists showing the claimant's condition deteriorated after the ALJ's decision. *See Washington*, 806 F.3d at 1322–23 (discussing why new evidence submitted after the ALJ's decision was chronologically relevant); *see also Hargress*, 883 F.3d at 1309 (citation omitted) (discussing three factors *Washington* considered under the "special circumstances" of that case).

The Appeals Council's decision whether to review the ALJ's decision because of new evidence is subject judicial review. *Washington*, 806 F.3d at 1320 (quotation and citation omitted). Whether evidence submitted to the Appeals Council is new, material, and chronologically relevant, is a legal question subject to de novo review. *Id.* at 1321 (citations omitted).

After the ALJ's decision on August 29, 2017, Ms. McLeod submitted thirty-three pages of medical records. (Tr. 8–23, 25–41). All medical records she submitted are dated after the ALJ's decision. (*Id.*). Therefore, Ms. McLeod's submitted medical records are new.

Ms. McLeod's new medical evidence is also chronologically relevant to the period before the ALJ's decision. On a medical record dated September 18, 2017, Sheri Mehl, a nurse practitioner, notes that Ms. McLeod's last visit was on July 7, 2017—before the ALJ's decision. (Tr. 12). Further, other new

11

medical records signed by Mehl (who works at Thomas A. DiGeronimo, M.D., P.A.) note that Ms. McLeod's symptoms began in 1995. (Tr. 12, 17). Other medical records also come from Dr. DiGeronimo. (Tr. 19–23). Ms. McLeod testified at her hearing before the ALJ that Dr. DiGeronimo treated her for back pain. (Tr. 84). A medical record dated September 5, 2017, from Suncoast Community Health Centers notes that Ms. McLeod's visit was for a follow-up appointment. (Tr. 26). The ALJ reviewed medical records from Suncoast Community Health Centers when issuing his decision. (Tr. 51). And the new medical records—the latest of which is dated October 30, 2017—include notes demonstrating that the treating nurse practitioner, physician's assistant, or doctor reviewed Ms. McLeod's past medical history. (Tr. 9–18, 26–41). These facts sufficiently demonstrate that the new medical evidence Ms. McLeod submitted to the Appeals Council is chronologically relevant.

Ms. McLeod's new medical evidence, however, is not material because no reasonable probability exists that the evidence would change the Commissioner's final decision. On new medical records dated September 18, 2017 and October 16, 2017, Ms. McLeod's physical examinations revealed normal strength in most of her musculoskeletal system with some trigger points, tenderness, and spasms in her back. (Tr. 13, 18). Ms. McLeod's assessments on those dates included lumbar radiculopathy, "spasm of back muscles," and "numbness and tingling sensation of skin." (Tr. 13, 18).

A new medical record dated September 25, 2017, lists Ms. McLeod's chief complaint as "numbness and tingling in the bilateral upper extremities." (Tr. 19). Impressions from an electromyography that same date reveal "left mild sensory carpal tunnel syndrome" and "normal recruitment." (Tr. 21). Dr. DiGeronimo recommended anti-inflammatory medications, wrist splints, injections, and a surgical evaluation. (*Id.*).

New medical records from Suncoast Community Health Centers show Ms. McLeod chiefly complaining about headaches and shortness of breath. (Tr. 26, 31, 39). Those records also note Ms. McLeod was "alert and oriented" with "no acute distress." (Tr. 27, 31). Ms. McLeod's assessments included: hypertension, asthma, bipolar disorder, diabetes, hypothyroidism, dorsalgia, "schizoaffective disorder, bipolar type," and gastroesophageal reflux disease. (Tr. 27, 31, 34, 37, 39). A chest x-ray dated September 14, 2017, revealed "no acute airspace disease." (Tr. 30).

Ms. McLeod's new medical records contain information the ALJ already considered when he issued his decision. For example, the ALJ discussed a medical opinion from Dr. Robin R. Hughes dated June 23, 2015. (*See* Tr. 51) (citing Exhibit 7F). On that date, Ms. McLeod's chief complaints included asthma, hypertension, bipolar disorder, cataracts, back pain and tendonitis. (Tr. 818). Dr. Hughes noted that Ms. McLeod appeared "alert, oriented and cognitively intact." (*Id.*). Dr. Hughes noted back spasms, tenderness, and

passive range of motion in Ms. McLeod's spine and extremities. (Tr. 819). Dr. Hughes also noted "[n]o restrictions with gross or fine dexterity of hands." (*Id.*). Ms. McLeod's gait demonstrated she could walk, bend with difficultly, rise from a chair, and "move about the room with difficulty." (*Id.*). Dr. Hughes diagnosed Ms. McLeod with asthma, coronary artery disease, hypertension, bipolar disorder, cataracts, chronic back pain, and "bilateral tendonitis of the wrists." (Tr. 820).

The ALJ also discussed medical records from South Florida Baptist Hospital. (*See* Tr. 51) (citing Exhibit 11F). In an emergency-room visit on November 4, 2015, Ms. McLeod complained about back pain. (Tr. 926). Ms. McLeod appeared "alert" with "no acute distress." (Tr. 927). Her musculoskeletal system had normal range of motion. (*Id.*). And she was diagnosed with elevated blood pressure and low back pain. (Tr. 929).

The ALJ also reviewed and discussed medical records that discuss Ms. McLeod's involuntary protective custody under Florida's Baker Act and her reports of auditory hallucinations. (Tr. 52) (citations omitted).

A review of the medical records the ALJ discussed and reviewed in his decision reveals Ms. McLeod's new medical records contain no evidence that would reasonably result in a different administrative decision. Ms. McLeod's new medical records contain the same symptoms she complained about in medical records the ALJ reviewed. And the new medical records contain the

14

same observations and assessments as the medical records the ALJ reviewed and discussed. Ms. McLeod's new medical evidence is not material, and the Appeals Council committed no error when it concluded that the new evidence "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision."

### 3. Whether Ms. McLeod should be granted leave to submit a motion for remand.

Ms. McLeod requests permission to submit a motion for remand under "42 U.S.C. Section 406(b)." (Doc. 20, p. 22). Ms. McLeod points out she "was recently approved pursuant to a new claim." (*Id.*). Ms. McLeod argues the Commissioner "is in exclusive possession" of medical records relevant to Ms. McLeod's approved claim. According to Ms. McLeod, she requested a copy of her claims file from the Commissioner. (*Id.*). So, Ms. McLeod "request[s] 60 days from the date the joint memorandum is filed within which to file a supplemental memorandum or law or a motion to remand under 42 U.S.C. Section 406(b), if the records maintained by the [Commissioner] support the same." (*Id.*).

A court may remand the Commissioner's final decision so the Commissioner can consider new evidence. 42 U.S.C. § 405(g). But the claimant bears the burden of proving that a remand under Section 405(g) is necessary. *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015)

(citation omitted). To obtain a remand under Section 405(g), the plaintiff must demonstrate (1) new, noncumulative evidence exists, (2) the new evidence is material (i.e., a reasonable possibility exists that the new evidence would change the administrative result), and (3) good cause exists for not submitting the new evidence at the administrative level. *Id.* (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)).

Here, Ms. McLeod makes no showing about the materiality of the new evidence, which is apparently related to a different disability claim. Nor does she establish good cause for not submitting new evidence at the administrative level. In fact, she fails to even describe what exactly the new evidence is, and that leaves an open question about whether the new evidence is cumulative. Therefore, Ms. McLeod fails to establish that a remand under Section 405(g) is appropriate, and her request for leave to submit a motion for remand is denied.

## IV. CONCLUSION

The Appeals Council committed no error when it declined to review the ALJ's decision in light of Ms. McLeod's new medical evidence. The Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner consistent with 42 U.S.C. Section 405(g).

**ORDERED** in Tampa, Florida, on August 6, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge